ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE CONTRACTING, INC., a California corporation,<br><br>Defendant. | CASE NO.:<br><br>COMPLAINT FOR MONETARY DAMAGES FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT;<br><br>[29 U.S.C. §§ 185, 1109, 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185] |

Plaintiff, CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, ("CLTF") alleges:

**JURISDICTION AND VENUE**

1.  This action is brought by a fiduciary administrator on behalf of employee benefit plans to collect monthly fringe benefit contributions due such plans in accordance with the terms and conditions of the plans, the collective bargaining

-1-

1  agreement between the employer and a labor organization and pursuant to statutes.
2  This Court has jurisdiction over this action pursuant to sections 502(g)(2) and 515 of
3  the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C.
4  §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C.
5  § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA)
6  (codified at 29 U.S.C. § 185).  Pursuant to section 502(e)(2) of ERISA (codified at 29
7  U.S.C. § 1132(e)(2)), venue is proper in this district as the employer's performance and
8  breach took place in this district and the plans are administered in this district.

## PARTIES

2.  CLTF is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; Southern California Environmental Contractors Association Contract Administration/Industry Promotion Trust Fund; Southern California Partnership for Jobs Trust Fund; San Diego County Laborers' Pension Trust Fund; and San Diego Construction Advancement Trust Fund  (hereinafter referred to collectively as "TRUST FUNDS").   The TRUST FUNDS are express trusts created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186). CLTF and the TRUST FUNDS' (collectively hereinafter referred to as "Plaintiff") principal places

435057.1

of business are in the County of Los Angeles, State of California.

3. CLTF is a fiduciary as to the TRUST FUNDS, in that it:

    A. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) fringe benefit contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    B. Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4. Plaintiff is informed and believes and thereon alleges that Defendant, EAGLE CONTRACTING, INC., ("EMPLOYER"), is a California corporation organized and existing under and by virtue of the laws of the State of California and is engaged in business in the State of California with its principal place of business in the City of Bell Gardens, County of Los Angeles, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## **OTHERS**

5. The Southern California District Council of Laborers and its affiliated Local Unions, (collectively "UNION") is, and at all relevant times was, a labor

435057.1

organization representing employees affecting interstate commerce. The UNION is not a party to this action.

## AGREEMENTS

6. EMPLOYER became bound to certain Project Stabilization Agreements ("PSAs") for work on projects for the Los Angeles Unified School District ("LAUSD"), Los Angeles Community College District ("LACCD") and San Diego Unified School District ("SDUSD"), effective on the dates EMPLOYER commenced work on projects for the LAUSD, LACCD, and SDUSD (collectively "SCHOOL DISTRICTS") covered by the PSAs for each of the SCHOOL DISTRICT. EMPLOYER also became signatory to a Laborers' Asbestos Agreement with the UNION and its affiliated Local Union 300 on or about May 30, 2018 for work on a project known as the "Great Park Western Sector Project" located in the City of Irvine, State of California and for a project for the Rowland Unified School District in or about April 2015 ("ASBESTOS AGREEMENTS".)

7. Pursuant to the SCHOOL DISTRICT'S PSAs and the ASBESTOS AGREEMENTS, EMPLOYER became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended ("TRUST AGREEMENTS") and became obligated to certain terms and provisions of the UNION'S Master Labor Agreements ("MLA") covering EMPLOYER'S work. The referenced Agreements will be collectively referred to as "AGREEMENTS".

8. The AGREEMENTS obligate EMPLOYER to pay fringe benefit contributions at the rates set forth in the AGREEMENTS for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS ("MONTHLY CONTRIBUTIONS"). The EMPLOYER is additionally required to submit monthly reports with these MONTHLY CONTRIBUTIONS, detailing the name, address, social

435057.1

security number and hours worked that month for each employee covered by the AGREEMENTS and those monthly reports are required to be submitted even where there are no employees to report for the reporting period.  The TRUST FUNDS depend on the truth and accuracy of this information, in order to not only determine the correct amount of MONTHLY CONTRIBUTIONS due, but to fulfill their own fiduciary duties to properly credit participants towards the benefits provided by the TRUST FUNDS.  Those MONTHLY CONTRIBUTIONS constitute assets of the TRUST FUNDS, pursuant to the terms of the AGREEMENTS and applicable law, from the time they are due and can be reasonably segregated from other funds.  The Trustees of the TRUST FUNDS have a fiduciary duty to marshal those assets so that they may be applied for the benefit of the participants and beneficiaries in accordance with the various Trust Agreements.

      9. The PSAs obligate EMPLOYER, and any of its subcontractors or lower-tiered subcontractors, to become bound to the PSAs for their work on the projects for the SCHOOL DISTRICTS, and the ASBESTOS AGREEMENTS require EMPLOYER to only subcontract work covered by the ASBESTOS AGREEMENT to the Agreements to those subcontractors who are parties to an appropriate Labor Agreement with the UNION, and failure to do so will result in damages to the TRUST FUNDS and EMPLOYER will be financially obligated to the TRUST FUNDS for the damages caused therefrom, including amounts measured by the fringe benefit MONTHLY CONTRIBUTIONS, liquidated damages, and interest that would be owed by the subcontractor if signatory to the AGREEMENT.

      10. The ASBESTOS AGREEMENT further provides that if EMPLOYER subcontracts work to and/or if its subcontractor(s) or lower-tiered subcontractors, subcontracts work covered under the AGREEMENTS to any subcontractor who is delinquent in its obligations to the TRUST FUNDS under its AGREEMENTS, then EMPLOYER will be financially obligated to the TRUST FUNDS for the amounts owed by said delinquent subcontractor, including any fringe benefits, liquidated damages and

1 interest owed.

2     11.    By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(C), EMPLOYER is obligated to pay to the TRUST FUNDS, as and for liquidated damages for detriment caused by the failure of EMPLOYER to pay fringe benefit MONTHLY CONTRIBUTIONS in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid MONTHLY CONTRIBUTIONS or interest on the unpaid MONTHLY CONTRIBUTIONS at rates established pursuant to the AGREEMENTS from their respective due dates, whichever is the greater amount, for each of the TRUST FUNDS to which EMPLOYER is required to contribute.

     12.    By the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B), EMPLOYER is obligated for payment of interest on delinquent MONTHLY CONTRIBUTIONS from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

     13.    The AGREEMENTS and ERISA provide the TRUST FUNDS with specific authority to examine and copy all of EMPLOYER'S payroll and business records which may be pertinent to determining whether EMPLOYER has reported all hours worked (or paid for) by employees who perform services covered under the AGREEMENTS and has paid the appropriate MONTHLY CONTRIBUTIONS to the TRUST FUNDS, and that the EMPLOYER shall be responsible for the costs of such audit.

## BREACH OF AGREEMENTS

     14.    Plaintiff is informed and believes and based on such information and belief alleges that EMPLOYER (1) failed to submit timely monthly reports to the TRUST FUNDS with full payment; and (2) employed employees who performed services

435057.1

covered by the AGREEMENTS and failed to pay the rates specified in the AGREEMENTS to TRUST FUNDS for each hour worked (or paid for) by those employees performing services covered by the AGREEMENTS.

15. Plaintiff conducted audits of EMPLOYER'S records pursuant to the authority in the AGREEMENTS and 29 U.S.C. §§ 1059 and 1145, which disclosed hours worked by employees which were not reported to the TRUST FUNDS nor were contributions paid for all hours worked during the period from July 2016 to September 2020.

## DAMAGES

16. As a result of EMPLOYER'S failure to pay the MONTHLY CONTRIBUTIONS for all hours worked by EMPLOYER'S employees performing work under the AGREEMENTS as specified in the AGREEMENTS, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to the TRUST FUNDS from EMPLOYER, during time periods from March 2015 to September 2020 damages in the sum of at least $407,314.95 consisting of $195,141.18 in unpaid MONTHLY CONTRIBUTIONS, $162,903.92 in liquidated damages, $11,840.00 in audit fees; and $52,365.05 in interest on the late and/or unpaid MONTHLY CONTRIBUTIONS owed to the TRUST FUNDS through December 23, 2021, plus additional accrued interest thereafter at the plan rate(s), currently 5.25% per annum, until payment of the contribution is made, less a credit of $14,935.20, plus any additional MONTHLY CONTRIBUTIONS, liquidated damages, subcontracting violations, audit fees and interest on the additional amounts owed at the plan rate(s), according to proof at the time of trial or other hearing. The amounts owed by EMPLOYER covering time periods from March 2015 through December 2017 were not discovered until the audit of EMPLOYER'S records was initially completed in April 2018.

/ / /

# TOLLING AGREEMENT

17.     Plaintiff previously filed a lawsuit against EMPLOYER in the above referenced Court on April 28, 2020 entitled *Construction Laborers Trust Funds for Southern California etc., v. Eagle Contracting, Inc.,etc. et al.,* case no. 2:20-cv-03881-PA-PJW which was dismissed without prejudice on July 30, 2020 pursuant to a stipulation re dismissal between the parties in view of a Tolling Agreement between the parties to allow the audit of EMPLOYER's records to be completed and to allow the parties time to determine if the Audit could be settled.

18.     The parties entered into written Tolling Agreement on or about July 28, 2020 which provides that *"all statutes of limitations applicable to the TRUST FUNDS' right to take legal action (including CLTF's right to take action on its behalf) against EMPLOYER and RIVERA to recover the Claims asserted in the Lawsuit are tolled and the statute of limitations to recover the Claims asserted in the Lawsuit are extended to May 31, 2021 or the date this Tolling Agreement is terminated.* Thereafter, the TRUST FUNDS, EMPLOYER and RIVERA, (hereinafter collectively, "PARTIES") entered into Amended Tolling Agreements to extend the expiration date of the tolling of the statute of limitation as follows: (1) An Amended Tolling Agreement was entered into by the PARTIES on or about May 10, 2021 extending the statute of limitations to August 31, 2021, (2) A Second Amended Tolling Agreement entered into by the PARTIES on or about August 18, 2021 extending the statute of limitations to October 30, 2021 and a Third Amended Tolling Agreement entered into on or about September 20, 2021which extended the statute of limitations to December 31, 2021 (collectively "Tolling Agreements").

19.     The Tolling Agreements provided that after a date set forth in paragraph 5.D. of the Tolling Agreement, Notice of Termination of the Tolling Agreement could be served on 15-days written notice by both e-mail and mail by Plaintiff to EMPLOYER and RIVERA's counsel, E. Sean McLoughlin and Richard Zuniga of Hill,

435057.1

Farrer & Burrill LLP ("Counsel") at their business and e-mail addresses and/or by EMPLOYER and RIVERA to Plaintiff by both e-mail and mail to Plaintiff's counsel, Marsha M. Hamasaki and Peter A. Hutchinson of Reich, Adell & Cvitan at their business and e-mail addresses as set forth in paragraph 5.D of the Tolling Agreements.

20. The PARTIES were able to resolve some issues in the Audit, but were not able to resolve others. Therefore, counsel for the TRUST FUNDS sent a Notice of Termination to counsel for the EMPLOYER and RIVERA, by e-mail and mail on December 9, 2021 terminating the Tolling Agreements.

21. Under the terms of the AGREEMENTS and section 502(g)(2) of ERISA, the EMPLOYER is liable to the TRUST FUNDS not only for the amount any delinquent contributions but also for Pre-judgment interest on the delinquent sums at the rates provided in the AGREEMENTS; Liquidated damages as provided in the AGREEMENTS; Attorneys' fees and costs; and Costs of the audit. If any additional delinquent amounts including MONTHLY CONTRIBUTIONS, liquidated damages, interest and audit fees are discovered to be owed by EMPLOYER, said amounts will be established by proof at the time of trial or other hearing.

22. The failure of the EMPLOYER to pay MONTHLY CONTRIBUTIONS when due causes harm to the TRUST FUNDS and its participants, which is impractical to accurately quantify. This may include the cost of collecting the MONTHLY CONTRIBUTIONS from the EMPLOYER or third parties (not including the costs of this litigation), the cost of special processing to restore benefit credits because of late MONTHLY CONTRIBUTIONS, the temporary loss of insurance coverage by employees (even if later restored) and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay MONTHLY CONTRIBUTIONS. The liquidated damages provision of the AGREEMENTS was meant to compensate for this unquantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees. The Trustees of the TRUST FUNDS have the

authority, in their discretion, to waive all or part of these liquidated damages. In this case, they have exercised their discretion by declining to waive any liquidated damages.

23. It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit MONTHLY CONTRIBUTIONS and/or damages against EMPLOYER, then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

24. Under Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent MONTHLY CONTRIBUTIONS but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

**FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF**

1. For the sum of $195,141.18, or according to proof, for delinquent fringe benefit MONTHLY CONTRIBUTIONS pursuant to the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(A);

2. Interest on the delinquent MONTHLY CONTRIBUTIONS, in the amount of $52,365.05 through December 23, 2021 plus additional accrued interest at the plan rate(s) and subject to proof, as required by the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B),

3. For liquidated damages in the sum of $162,903.92, or as subject to proof, as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(C);

435057.1

4. For reasonable attorney fees and costs of suit as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(D);

5. For Plaintiff's costs of audit in the sum of $6,400.00 and subject to proof, in accordance with the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(E);

6. For such other and further relief as the Court deems proper.

DATED: December 24, 2021

REICH, ADELL & CVITAN
A Professional Law Corporation

By: /s/ Marsha M. Hamasaki
MARSHA M. HAMASAKI
Attorneys for Plaintiff

435057.1